IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| IN THE MATTER OF: | CASE NO. BK17-40561-TLS |
| COREY LEE BRAUN, | CH. 7 |
| Debtor. | |
| FIRST NATIONAL BANK OF GORDON, | ADV. NO. A17-04042-TLS |
| Plaintiff, | |
| vs. | |
| COREY LEE BRAUN, | |
| Defendant. | |

## ORDER

Trial was held by video conference on November 26, 2018, on Plaintiff's Complaint objecting to discharge of Debtor (Fil. #1). Andrew Snyder appeared for Plaintiff, First National Bank of Gordon ("FNB"), and Stacy Bach appeared for Debtor-Defendant, Corey Lee Braun ("Braun").

FNB asserts that debts owed by Braun should be excepted from discharge under 11 U.S.C. § 523(a)(2)(B) because of, among other things, inaccuracies and/or omissions in financial statements provided by Braun. FNB also asserts that Braun should be denied a discharge under 11 U.S.C. § 727(a) because of, among other things, inaccuracies and/or omissions in Braun's bankruptcy schedules and statement of financial affairs ("SOFA"). Braun concedes that there were certain errors in his financial statements, schedules and SOFA, but that his intention was not to hinder or delay any party or intentionally make a false oath. As discussed below, I find that Braun should be denied a discharge.

*Background*

FNB and Braun had a banking/customer relationship since 1997. From 2013, through 2016, Braun applied for and obtained loans from FNB. The loans were evidenced by eight (8) promissory notes and were secured by security interests in certain assets of Braun. As part of the banking relationship, Braun provided financial statements to FNB on at least an annual basis. FNB now asserts that the financial statements were false in numerous ways and that FNB relied upon the financial statements for the advancement of new monies to Braun as well as extensions of existing credit. Braun disputes that he received any "new money" from FNB on some of the promissory notes. Braun testified that he did not understand the reason for providing FNB completed financial statements, but he did understand that he was required to provide true, accurate and correct statements of his financial condition.

Braun filed a Chapter 7 Bankruptcy proceeding on April 14, 2017, at Case Number BK17-40561. FNB conducted a Rule 2004 Exam of Braun on June 30, 2017, during which FNB's attorney questioned Braun about many (if not all) of the asserted inaccuracies and omissions asserted in this adversary proceeding. On July 11, 2017, Braun filed an amended SOFA disclosing or addressing most of the omissions noted by FNB during the exam. The next day, FNB timely filed this adversary proceeding under 11 U.S.C. § 523(a)(2)(B) and 11 U.S.C. § 727(a).

*Discussion*

FNB asserts that Braun should be denied a discharge under 11 U.S.C. § 727(a) (4). That section provides as follows:

> (a) The court shall grant the debtor a discharge, unless–
>     . . .
>     (4) the debtor knowingly and fraudulently, in or in connection with the case–
>         (A) made a false oath or account;

In a proceeding under § 727 for denial of discharge, the burden of proof is on the objecting party to prove each element of a § 727 complaint by a preponderance of the evidence. *Floret, L.L.C. v. Sendecky (In re Sendecky)*, 283 B.R. 760, 763 (B.A.P. 8th Cir. 2002) (quoting *Korte v. United States (In re Korte)*, 262 B.R. 464, 471 (B.A.P. 8th Cir. 2001)). "The denial of a debtor's discharge is a 'harsh sanction,' therefore, the provisions of 11 U.S.C. § 727(a) are 'strictly construed in favor of the debtor.'" *Id.*

Under § 727(a)(4)(A), a debtor should be denied a discharge for knowingly and fraudulently making a false oath or account in connection with the case. The Eighth Circuit Bankruptcy Appellate Panel described the analysis under § 727(a)(4)(A) as follows:

> Section 727(a)(4)(A) "provides a harsh penalty for the debtor who deliberately secretes information from the court, the trustee, and other parties in interest in his case." *Cepelak v. Sears (In re Sears)*, 246 B.R. 341, 347 (8th Cir. BAP 2000). That provision provides in relevant part that a debtor is entitled to a discharge unless he "knowingly and fraudulently, in or in connection with the case . . . made a false oath or account." 11 U.S.C. § 727(a)(4)(A) (1994). For such a false oath or account to bar a discharge, the false statement must be both material and made with intent. *See Mertz v. Rott*, 955 F.2d 596, 597-98 (8th Cir. 1992); *Palatine Nat'l Bank v. Olson (In re Olson)*, 916 F.2d 481, 483-84 (8th Cir. 1990); *Chalik v. Moorefield (In re Chalik)*, 748 F.2d 616, 618 (11th Cir. 1984). Noting that the "threshold to materiality is fairly low," this court recently articulated the standard for materiality: "The subject matter of a false oath is 'material' and thus sufficient to bar discharge, if it bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property." *In re Sears*, 246 B.R. at 347 (quoting *In re Chalik*, 748 F.2d at 618). The

question of a debtor's "knowledge and intent under § 727(a)(4) is a matter of fact." *In re Sears*, 246 B.R. at 347 (citing *In re Olson*, 916 F.2d at 484). Intent "can be established by circumstantial evidence," and "statements made with reckless indifference to the truth are regarded as intentionally false." *Golden Star Tire, Inc. v. Smith (In re Smith)*, 161 B.R. 989, 992 (Bankr. E.D. Ark. 1993) (citing *In re Sanders*, 128 B.R. 963, 964 (Bankr. W.D. La. 1991)).

As § 727(a)(4)(A) makes clear, "[t]he Code requires nothing less than a full and complete disclosure of any and all apparent interests of any kind." *Fokkena v. Tripp (In re Tripp)*, 224 B.R. 95, 98 (Bankr. N.D. Iowa 1998) (citing *In re Craig*, 195 B.R. 443, 451 (Bankr. D.N.D. 1996)). The debtor's "petition, including schedules and statements, must be accurate and reliable, without the necessity of digging out and conducting independent examinations to get the facts." *In re Sears*, 246 B.R. at 347 (citing *Mertz v. Rott*, 955 F.2d 596, 598 (8th Cir. 1992)). *See generally National Am. Ins. Co. v. Guajardo (In re Guajardo)*, 215 B.R. 739, 742 (Bankr. W.D. Ark. 1997) ("[T]he Bankruptcy Code requires disclosure of all interests in property, the location of all assets, prior and ongoing business and personal transactions, and, foremost, honesty. The failure to comply with the requirements of disclosure and veracity necessarily affects the creditors, the application of the Bankruptcy Code, and the public's respect for the bankruptcy system as well as the judicial system as a whole."). Statements made in schedules are signed under penalties of perjury and have "the force and effect of oaths," and testimony elicited at the first meeting of creditors is given under oath. *In re Smith*, 161 B.R. at 992 (citing *In re Sanders*, 128 B.R. 963 (Bankr. W.D. La. 1991)).

*Korte v. United States (In re Korte)*, 262 B.R. 464, 474 (B.A.P. 8th Cir. 2001).

With that legal backdrop, FNB asserts that Braun should be denied a discharge under section 727(a)(4) because of numerous omissions from and/or inaccuracies in Braun's schedules and SOFA. Specifically:

1. Braun admits that he operated two businesses as sole proprietorships within four (4) years before filing bankruptcy--Hay Mafia and Panhandle Forage. SOFA part 11, question 27, requires a debtor in bankruptcy to give details about any business owned or having connections to any business within 4 years prior to filing bankruptcy. On both his original and his amended SOFA's, Braun checked "NO" as to having any interest as a sole proprietor, self employed in a trade, profession or other activity, either full-time or part-time.

2. Braun listed two semi-trailers, a 2008 and 2011 Cornhusker, on his original Schedule B as "Two Semi Trailers–Leased" and having a zero value. However, Braun testified that he was not in possession of the trailers at the time of filing of his bankruptcy. Braun did not initially list the sale of the trailers on his SOFA but did

       list the sale in paragraph 18 of his amended SOFA as an item that had been sold or traded in the two years preceding the bankruptcy

3. Braun's financial statements provided to FNB stated that he owned a 1970 Chevy C10 pickup. He listed the value on financial statements as $25,000.00. The vehicle was not listed on Schedule B nor was the sale listed on his initial SOFA, but it was listed in his amended SOFA as an item that had been sold or traded in the two years preceding the bankruptcy.

4. Braun's financial statements with FNB showed an account receivable from an individual named Terry Walker in the amount of $160,000.00. However, Braun failed to list that receivable in his bankruptcy schedules. Braun testified that the receivable was from hay sales and that he feels it is uncollectible.

5. In a number of separate transactions, Braun sold a 2001 Ford Ranger, a John Deere 6105D, a 2006 Sea-Doo boat, a Mustang GT convertible, a 2013 John Deere Gator, a 2002 Kenworth semi-tractor, a 2002 Peterbilt semi-tractor, a 2000 Peterbilt semi-tractor, a 1997 Kenworth semi-tractor, a 2012 Cornhusker trailer, and a 2014 cargo trailer within a year of filing bankruptcy but did not list the sales in his initial SOFA. He testified that the sales were mostly to satisfy secured creditors, although he did receive and use excess proceeds from some of the sales. He did list the sales in his amended SOFA as items that had been sold or traded in the two years preceding the bankruptcy.

6. Braun failed to list a loan payment to his mother for $1,500.00 in paragraph 7 of his initial SOFA. The payment was listed in his amended SOFA.

7. Braun listed his tools and a toolbox on his amended Schedule B with a value of only $2,000.00 and a debt of slightly more than $5,000.00. At the time of trial, Braun testified that in addition to tools, he owned two tool boxes at the time of filing bankruptcy--one worth $400.00 and another worth $13,000.00. He also testified that he expects the tool boxes to be repossessed.

       Braun does not dispute the existence of the errors on his initial schedules, nor does he dispute the material nature of those errors. In other words, he does not deny that he made false oaths in his schedules and SOFA. Further, the omissions and misstatements were directly related to Braun's business dealings, his assets, and the existence and disposition of his property. Thus, they were material. *Cepelak v. Sears (In re Sears)*, 246 B.R. 341, 347 (8th Cir. BAP 2000).

       Instead, Braun's only defense is that errors were not intentional and that he amended his SOFA promptly after his 2004 exam conducted by FNB. Other than his testimony that he is "not very good with dates," he provided no explanation as to why he did not initially disclose the various

omitted transactions. It is apparent to this Court that Braun simply did not make an effort to ensure the accuracy and completeness of his schedules.

For purposes of section 727(a)(4)(A), intent "can be established by circumstantial evidence," and "statements made with reckless indifference to the truth are regarded as intentionally false." *Golden Star Tire, Inc. v. Smith (In re Smith)*, 161 B.R. 989, 992 (Bankr.E.D.Ark.1993) (citing *In re Sanders*, 128 B.R. 963, 964 (Bankr.W.D.La.1991)). Here, the sheer volume of misstatements and omissions demonstrates, at a minimum, reckless indifference to the truth. Contrary to Braun's argument in his closing brief, the false statements go far beyond his failure to identify his former business interests in Paragraph 27 of the SOFA.

In addition to his failures in paragraph 27 of the SOFA (which as of this date still have not been corrected), Braun initially failed to list at least fourteen different sales or transfers of assets that took place within two years of filing bankruptcy as required by paragraph 18 of the SOFA. Actually, most of those transactions took place less than one year prior to filing and the amended SOFA was filed after the case trustee had already conducted his examination and filed his no-asset report. Further, despite his testimony that the value of his tools and toolboxes far exceed the amounts he scheduled, and his testimony as to the existence of a large (though possibly uncollectible) account receivable, Braun still has not filed amended schedules to properly reflect those assets. Again, those failures demonstrate reckless indifference to the truth.

Braun's schedules and SOFA are not accurate or reliable. This is not a situation where there were only one or two innocent omissions; instead, they were numerous. Many were corrected, but only after a creditor went through the effort to dig them out. The debtor's "petition, including schedules and statements, must be accurate and reliable, without the necessity of digging out and conducting independent examinations to get the facts." *In re Sears*, 246 B.R. at 347 (citing *Mertz v. Rott*, 955 F.2d 596, 598 (8th Cir. 1992)). Some have not been corrected at all.

Accordingly, I find that the elements for denial of discharge under 11 U.S.C. § 727(a)(4)(A) have been met, and it is not necessary to address the cause of action under § 523.

IT IS, THEREFORE, ORDERED that judgment should be entered in favor of FNB and against Braun, denying Braun a discharge pursuant to 11 U.S.C. § 727(a)(4)(A). Separate judgment will be entered.

DATED: January 14, 2019.

BY THE COURT:

/s/Thomas L. Saladino
Chief Judge

Notice given by the Court to:
    *Andrew Snyder
    Stacy Bach
    Philip M. Kelly, Trustee
    U.S. Trustee

Movant (*) is responsible for giving notice to other parties if required by rule or statute.